IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CV-51-FL(3)

| | |
|---|---|
| WARREN T. EDGE,<br>    Plaintiff,<br><br>        v.<br><br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   **MEMORANDUM &**<br>)   **RECOMMENDATION**<br>)<br>)<br>)<br>) |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings **[DE's 16-17 & 20-21]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant that Plaintiff is no longer disabled. For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-16]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-20]** be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

In a decision dated March 8, 2001, Plaintiff was found to be disabled as of March 1, 2000. (Tr. 14). On September 24, 2004, it was determined that Plaintiff was no longer

1

disabled as of September 1, 2004. *Id.* This determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant time period in a decision dated October 10, 2006. *Id.* at 14-23. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on January 31, 2007, rendering the ALJ's determination as Defendant's final decision. *Id.* at 5-7. Plaintiff filed the instant action on March 29, 2007 **[DE-1]**.

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the

2

Case 7:07-cv-00051-FL   Document 22   Filed 02/07/08   Page 2 of 12

court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

**Analysis**

The Social Security Administration has promulgated an eight-step sequential analysis to be followed in a continuing disability case. 20 C.F.R. § 404.1594(f). At step one, if the claimant is currently engaged in substantial gainful activity, disability will be found to have ended. 20 C.F.R. § 404.1594(f)(1). When substantial gainful activity is not an issue, at step two it must be determined whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in the 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1594(f)(2). If the claimant does, his disability continues. *Id.* However, if the claimant does not meet or equal a listed impairment, at step three it must be determined whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). Medical improvement is any decrease in medical severity of the impairments as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1). The analysis proceeds to the fourth step if medical improvement has occurred. 20 C.F.R. § 404.1594(f)(4). At step four, it must be determined whether medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's

3

capacity to perform basic work activities. 20 C.F.R. § 404.1594(b)(4). If the medical improvement is related to the ability to work, the analysis proceeds to the sixth step. 20 C.F.R. § 404.1594(f)(4). At step five, it must be determined if an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions. When an exception from the first group applies, the analysis proceeds to step six. *Id.* However, if an exception from the second group applies the claimant's disability ends. *Id.* If no exception to medical improvement applies, then the claimant's disability continues. *Id.* At step six it must be determined whether all the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. *Id.* Otherwise, the analysis proceeds to the next step. *Id.* At step seven, the claimant's residual functional capacity ("RFC") must be assessed based on the current impairments to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant has the capacity to perform past relevant work, his disability has ended. *Id.* Otherwise, the analysis proceeds to the last step. At the eighth and final step it must be determined whether other work exists that the claimant can perform. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work, he is no longer disabled. *Id.* Otherwise, his disability continues. *Id.*

In the instant action, the ALJ employed the eight-step sequential evaluation. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity (Tr. 16). Next, the ALJ found that as of September 1, 2004, Plaintiff did not have an impairment or

4

combination of impairments which met or medically equaled the severity of a listed impairment. *Id.* at 17. The ALJ then noted that medical improvement had occurred which was related to Plaintiff's ability to work. *Id.* These findings rendered step five irrelevant to the instant case. At step six, the ALJ determined that Plaintiff continued to have a severe impairment or combination of impairments. *Id.* Then, at step seven, the ALJ found that Plaintiff was unable to perform his past relevant work as a logger. *Id.* at 21-22. However, at step eight, the ALJ determined that Plaintiff was capable of performing other work in the national economy. *Id.* at 22-23. Accordingly, the ALJ concluded that Plaintiff's disability had ended as of September 1, 2004. *Id.* at 23. This conclusion was supported by substantial evidence, a summary of which shall now follow.

Plaintiff was in an automobile accident in 1984 in which he received a severe injury to his left eye and injuries to the vicinity of the right eye (Tr. 33, 129). After the accident, Plaintiff graduated from high school and completed three or four semesters of college. *Id.* at 188. In 1992, Plaintiff's left eye was removed and replaced with a prosthetic eye. *Id.* at 33. Based on an eye examination which indicated that Plaintiff had a prosthetic left eye and 20/200 vision in the right eye, he was found to meet the impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix I, § 2.02. *Id.* at 32-34. Therefore, Plaintiff was found to have been under a disability since March 1, 2000 in an opinion dated March 8, 2001. *Id.*

On July 6, 2005, Dr. Franklin Egolf conducted a psychological evaluation of Plaintiff. *Id.* at 129-132. During the evaluation, Plaintiff denied any previous psychiatric or mental health center treatment. *Id.* at 129. Dr. Egolf noted that Plaintiff "had no particular difficulty

5

entering into the testing and generally appeared to put forth a reasonably good effort to do as well as possible on the test items." *Id.* at 130. Thus, Dr. Egolf stated that Plaintiff's results were a valid and fair indication of his current level of functioning. *Id.* On the WAIS-III, Plaintiff obtained a full scale IQ score of 67. *Id.* Dr. Egolf "noted that this score was obtained through a full administration of the WAIS-III, including those subtests that have a high loading for visual stimuli and visual acuity, and . . . these were [generally] the subtests where [Plaintiff had] . . . his weakest performances." *Id.* Plaintiff also obtained a verbal IQ score of 72 and a performance IQ score of 67. *Id.* Again, Dr. Egolf noted that these scores were, to a certain extent, "a reflection of the difficulties that [Plaintiff] has with visual material." *Id.* Based on these scores, Dr. Egolf diagnosed Plaintiff with "borderline intellectual functioning." *Id.* at 131. Specifically, Dr. Egolf explained that Plaintiff was "functioning in the borderline range [of mild mental retardation] but has visual deficits that impair his performance in any areas that involve visual stimuli." *Id.*

Plaintiff's mental RFC was assessed by Dr. Walter Scarborough on August 2, 2005. *Id.* at 145-162. It was determined that Plaintiff was "moderately limited" in his ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 5) interact appropriately with the general public; and 6) respond appropriately to changes in the work setting. *Id.* at 145-146. Dr. Scarborough stated that Plaintiff was "not significantly limited"

in all other mental RFC categories. *Id.* He also opined that Plaintiff was capable of performing simple, routine, repetitive tasks. *Id.* at 147. Ultimately, Dr. Scarborough determined that Plaintiff's borderline intellectual functioning did not precisely satisfy Listing 12.05C. *Id.* at 153.

Dr. Jerome Albert conducted a psychological evaluation of Plaintiff on March 28, 2006. *Id.* at 176-181. During the evaluation, several tests were not administered because Plaintiff asserted he could not see the test stimuli. *Id.* at 176. Indeed, in contrast to the July 6, 2005 evaluation, Plaintiff claimed that "everything was a blur to him." *Id.* at 178. Plaintiff further claimed that he could not see Dr. Albert and that he was unable to walk to the lobby unattended because "all he could see were shadows." *Id.* at 176. On the verbal WAIS-III Plaintiff achieved a verbal score of 61. *Id.* at 177. However, Dr. Albert noted that Plaintiff's "motivation to succeed was not great . . . [h]e answered the questions sometimes in a flippant manner." *Id.* Likewise, Dr. Albert refused to assess Plaintiff's ability to do work-related activities because Plaintiff "did not appear to be trying." *Id.* at 179. Ultimately, Dr. Albert opined that Plaintiff probably had "borderline intellectual functioning based on the psychological evaluation of July 6, 2005."

Plaintiff was examined by Goldsboro Eye Clinic on April 20, 2006. *Id.* at 174. His visual field was intact. *Id.* Furthermore, Plaintiff had no problems walking in light or dark rooms. *Id.* Finally, Plaintiff admitted that he was able to drive. *Id.* Furthermore, Plaintiff's vision was examined by Dr. Luther Sappenfield on at least two occasions. *Id.* at 124-125,133-134. On both occasions, Dr. Sappenfield questioned the results because he doubted

7

Plaintiff's motivation and effort. *Id.* at 124, 133.

During the hearing in this matter Plaintiff asserted that he had cut his left thumb off and that it had been re-attached. *Id.* at 192. Because of this alleged injury, Plaintiff contended that he had difficulty picking up anything with his left hand. *Id.* at 192. However, the records contains no documented office visits, progress notes or other indications that Plaintiff sought treatment for his left hand. *Id*. at 16. Plaintiff further stated that his primary problem was his eyesight. *Id.* at 192-193. He explained that his is blind in his left eye and is able to see just a blur with his right eye. *Id.* at 193. In addition, Plaintiff asserted that he had to wear dark glasses all the time and that corrective lenses did not help his vision. *Id.* at 193, 198. However, Plaintiff did note that he was still able to drive. *Id.* at 197. Furthermore, Plaintiff stated that he lived by himself but that a friend came by everyday to do all of his housework, yard work and cooking. *Id.* at 196-197.

The ALJ made the following observations with regard to Plaintiff's credibility:

> The record amply documents reasons to (1) doubt the truthfulness of the claimant's allegations and (2) to doubt the validity of any medical findings that rely heavily on patient report or have an element of subjectivity. Note is taken of the hearing officer's interview (Exhibits 1E and 2E), the consultative examination by Dr. Sappenfield (Exhibits 2F and 5F), and the consultative psychological examination . . . [conducted by Dr. Albert]. Taken as a whole, they show that this claimant's allegations/complaints and those medical findings dependent on his cooperation cannot be taken at face value and, even more directly, that he is unreliable and noncredible . . . It is worth noting that the motor vehicle accident causing blindness in one of claimant's eyes occurred in 1984 and claimant still worked until he was laid off in 1999. Also, he could not see, supposedly, much of anything at the psychological consultative examination by Dr. Albert . . . but he is able to drive a car. Again, these factors [do] no enhance the claimant's credibility.
> *Id.* at 20-21.

Based on this record, the ALJ made the following findings with regard to Plaintiff's impairments:

> Considered individually and in combination, the claimant's impairments present as of September 1, 2004 did not meet or medically equal a listing. . . The claimant's decreased intellectual functioning is not of listing level severity. He lives alone and has average adaptive behavior skills. He does have evidence of low average functioning and a learning disability. The severity of his decreased intellectual functioning does not meet the criteria of section 12.05C because he does not have deficits in adaptive functioning consistent with mental retardation.
> *Id.* at 17.

Plaintiff asserts only one assignment of error in the instant action. Notably, Plaintiff does not challenge the finding that his previously disabling condition (Listing 2.02) has improved. Rather, Plaintiff contends that the ALJ erred in determining that Plaintiff's impairments did not equal the impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix I, § 12.05C ("Listing 12.05C"). Listing 12.05 states in pertinent part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .
> 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.

Listing 12.05C "makes it clear that mental retardation is a life-long, and not acquired, disability . . .[t]hus, to qualify as disabled under this listing, a plaintiff must first demonstrate

Case 7:07-cv-00051-FL   Document 22   Filed 02/07/08   Page 9 of 12

that he has had deficits in adaptive functioning that began during childhood." Smith v. Barnhart 2005 WL 823751, *4 (W.D.Va. 2005). See Luckey v. U.S. Dept. Of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1989). Accordingly, "[e]ven if the record clearly establishes that the plaintiff meets the requirements of section 12.05(C), a finding of mental retardation cannot be warranted without a finding that the plaintiff manifested deficits in adaptive function before age 22." Justice v. Barnhart, 431 F.Supp. 2d 617, 619 (W.D.Va. 2006)(citing Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006)). The crux of Plaintiff's argument is that the ALJ erred when he found that Plaintiff did not have deficits in adaptive functioning consistent with mental retardation. Specifically, Plaintiff argues that Dr. Egolf's assessment alone is sufficient to establish Plaintiff's alleged deficits in adaptive functioning. This contention is incorrect. "The Fourth Circuit has not held that low IQ alone proves manifestation of deficits in adaptive functioning before age 22 . . .[t]he cases . . . only hold that a finding of mental retardation is not precluded when an IQ test is not performed before age 22, rather than holding that manifestation of deficits in adaptive functioning before age 22 is firmly established by low IQ." Justice, 431 F.Supp. 2d at 619-620 (citing Luckey, 890 F.2d at 668). Because Plaintiff's entire claim hinges on this incorrect contention, his entire is meritless. Likewise, the Court also notes that this claim is meritless because the ALJ's finding that Plaintiff did not have deficits in adaptive function consistent with mental retardation was supported by the substantial evidence which has already been summarized *supra*.

Moreover, the requirements of Listing 12.05C are only satisfied when the relevant IQ
10

scores are "valid". Specifically:

> It is clear that the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score . . .[t]he word 'valid' would be superfluous otherwise. Where an I.Q. score is inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation.
> Powell v. Barnhart, 2005 WL 1926613, * 4 (W.D.Va. 2005)(citing Popp v. Heckler, 779 F.2d 14978, 1499 (11th Cir. 1986)).

Likewise, an ALJ "may decline to accept a claimant's performance [on an IQ test] where the claimant has demonstrated a work history inconsistent with those scores, or where the claimant's performance in IQ testing is depressed . . ." Robertson v. Barnhart, 2006 WL 3526901, * 2 (W.D. Va. 2006)(citing, 20 C.F.R. §§ 404.1520 and 416.920; Luckey, 80 F.2d at 666; Murphy v. Bowen, 810 F.2d 433 (4th Cir. 1987). Here, the ALJ found that the IQ scores recorded by Dr. Egolf were not valid (Tr. 20-21). To support this finding, the ALJ noted that "[t]he record amply documents reasons to . . .doubt the validity of any medical findings that rely heavily on patient report or have an element of subjectivity . . . those medical findings dependent on [Plaintiff's] cooperation cannot be taken at face value . . ." *Id.* at 20-21. The ALJ's determination with regard to the validity of Plaintiff's IQ scores is supported by substantial evidence, which has already been summarized, *supra*. Because the record does not contain any valid IQ scores which meet the requirements of Listing 12.05C, Plaintiff's claim is meritless.

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's

Motion for Judgment on the Pleadings **[DE-16]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-20]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 7th day of February, 2008.

_____
William A. Webb
U.S. Magistrate Judge

12

Case 7:07-cv-00051-FL   Document 22   Filed 02/07/08   Page 12 of 12