IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:07-CV-51-FL

| | | |
|---|---|---|
| WARREN T. EDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (DE ## 16, 20). United States Magistrate Judge William A. Webb entered a memorandum and recommendation ("M&R") recommending that the court deny plaintiff's motion, grant defendant's motion, and uphold the Commissioner's decision denying benefits. Plaintiff timely filed an objection to the M&R, and defendant timely filed a response. In this posture, the matter is ripe for ruling. For the reasons that follow, the court rejects plaintiff's objections to the M&R and upholds the Commissioner's decision.

BACKGROUND

Plaintiff, born in 1966, has a high school education and has worked as a logger. Prior to the discontinuation of his employment, plaintiff was making around $23,000 per year. On March 8, 2001, plaintiff was determined by an administrative law judge to be disabled due to vision impairment. Plaintiff has a prosthetic left eye as a result of an automobile crash in 1984, which led to a removal of the eye in 1992. The 2001 exam also stated that plaintiff had 20/200 vision in his right eye. As Listing 2.02 makes "loss of visual acuity" contingent on a finding that remaining

vision after best correction is "20/200 or less," plaintiff was determined to have been under this disability since March 1, 2000. 20 C.F.R. 404, Subpt. P, App. 1, § 2.02. The March 8, 2001 determination was plaintiff's most favorable medical decision finding that he was disabled, and is referred to as the "comparison point decision" ("CPD") by social security administrators. Over three years later, by letter dated August 4, 2004, the Social Security Administration ("SSA") wrote to plaintiff to inform him that it was beginning a review of his case to determine his continued eligibility for benefits and requesting certain documents from him. On September 24, 2004, the SSA again wrote to plaintiff, on this occasion alerting plaintiff to its determination that, after a review of updated documentation, including reports from the Bladen County Hospital, as well as a medical doctor, plaintiff was no longer disabled, effective September 1, 2004. This determination was upheld upon reconsideration after a disability hearing by a State agency disability hearing officer. The disability hearing officer, having found, among other things, that "[r]esults of the eye examinations are not considered credible or valid," determined that plaintiff was not disabled. (Tr. p. 53.)

    Plaintiff requested a hearing before an administrative law judge and on January 4, 2006 a hearing was held. It was determined that medical improvement had occurred and that there had been "a decrease in medical severity of the impairment present at the time of the CPD," namely that plaintiff's vision in his right eye had improved to at least 20/100 and some evidence indicated that plaintiff's vision was 20/70 in his functioning eye. (Tr. p. 17.) As a result of this change, as well as other evidence, such as the fact that plaintiff possessed a valid driver's license, it was determined that plaintiff was no longer disabled within the meaning of Listing 2.02. The administrative law judge also considered plaintiff's mental ability, finding that plaintiff "does not have deficits in

adaptive functioning consistent with mental retardation." Critically, the administrative law judge determined that plaintiff's recorded intelligence quotient ("I.Q.") scores "cannot be deemed reliable based on credibility issues . . . [and] these scores are certainly not binding insofar as section 12.05 is concerned." (Tr. p. 20.) Accordingly, on October 10, 2006, the administrative law judge issued a decision and found that plaintiff's disability ended as of September 1, 2004. The Appeals Council denied the plaintiff's request for review, and plaintiff timely requested judicial review under 42 U.S.C. section 405(g).

On his motion for judgment on the pleadings, plaintiff argued that he meets the criteria set forth in Listing 12.05, which concerns the disability of mental retardation due to the results of tests performed by Dr. Franklin D. Egolf, Jr. ("Dr. Egolf"), which found that plaintiff's IQ scores ranged from 67-72. Plaintiff argues that these scores, along with other evidence, qualifies him as disabled under Listing 12.05. In considering this argument, the magistrate judge recommended that the administrative law judge's determination that the IQ scores were unreliable was supported by substantial evidence and, even if the scores were reliable, plaintiff would still not meet the requirements of Listing 12.05. Therefore, the magistrate judge recommended a finding in favor of defendant.

DISCUSSION

A. Standard of Review

The court may "designate a magistrate [judge] to conduct hearings, including evidentiary hearings, and submit to a judge of the court proposed findings of fact and recommendations for disposition" of a variety of motions, including motions for judgment on the pleadings. 28 U.S.C. 636(b)(1)(A)-(B). "The magistrate . . . shall file his proposed findings and recommendations . . .

3

with the court[.]" 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. The court is obligated to make *de novo* determinations of those portions of the M&R to which objections have been filed. 28 U.S.C. § 636(b)(1)(C); see also Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

When reviewing a decision of an administrative law judge, the court looks to whether there is substantial evidence to support the findings and whether the law was applied correctly. See 42 U.S.C. § 405(g); Craig v. Chater, 76 F.3d 585, 589 (4th. Cir. 1996) (superseded by statute on other grounds); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (superseded by statute on other grounds). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (internal citation omitted); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Ultimately, it is the duty of the administrative law judge reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456. Even if the court disagrees with Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Id. With these principles in mind, and having benefit of the M&R, the court turns to the objections at hand.

B. Plaintiff's Objections to the M&R

Plaintiff objects to the M&R on the grounds that the I.Q. tests were, in fact, valid. Plaintiff's argument apparently is that there are no indications on the record that the I.Q. tests were invalid. By contrast, the administrative law judge found that "[t]he record amply documents reasons to . .

. doubt the validity of any medical findings that rely heavily on patient report or have an element of subjectivity . . . . [M]edical findings dependent on [plaintiff's] cooperation cannot be taken at face value . . . ." (Tr. pp. 20-21.) On review, this court finds that the administrative law judge's determination as to the invalidity of the I.Q. test was supported by substantial evidence.

It is the duty of the administrative law judge to make factual findings, evaluate the credibility of witnesses, and weigh contradicting evidence. Doss v. Worker's Comp. Programs, 53 F.3d 654, 658 (4th Cir. 1995). Subject to the substantial evidence requirement, noted above, an administrative law judge has the sole authority to make credibility determinations and resolve inconsistencies or conflicts in the evidence. Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1096 (4th Cir. 1993). Moreover, an administrative law judge must perform the gate-keeping function of qualifying evidence as "reliable, probative, and substantial" before relying upon it to grant or deny a claim. United States Steel Mining Co., 187 F.3d 384, 389 (4th Cir. 1999). An administrative law judge must evaluate the quality of medical opinions by considering "the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their freedom from irrelevant distractions and prejudices." Underwood v. Elkay Mining, Inc., 105 F.3d 946, 951 (4th Cir. 1997). See also Consolidation Coal Co. v. Necessary, No. 05-1953, 2008 WL 925281 (4th Cir. Apr. 7, 2008) (proper for ALJ to "carefully consider[] the credibility of [doctor's evaluation] and conclude[] that it was insufficiently documented and reasoned").

There are several instances in the record that offer substantial evidence to support the administrative law judge's decision concerning the validity of the I.Q. tests. Dr. Egolf suggested that plaintiff's I.Q. scores were lower than his actual ability because plaintiff had difficulty with

5

visual material. (Tr. p. 130.) Additionally, plaintiff misrepresented the degree of his vision loss to Dr. Jerome B. Albert ("Dr. Albert"), who performed an I.Q. test on plaintiff, and due to this alleged loss of vision Dr. Albert was unable to give plaintiff many of the tests that plaintiff had taken earlier with Dr. Egolf. (Tr. p. 176-177.) Dr. Albert, in conclusion, expressed doubts about the validity of the test, finding that "the examiner wonders about [plaintiff's verbal I.Q. score]. It is possible that the client was not motivated to do his best today." (Tr. p. 178.) Similarly, the record reveals that, after each of his eye examinations, plaintiff's eye doctor questioned the results because he doubted plaintiff's motivation and effort. (Tr. pp. 124, 133.) Given the breadth of the evidence suggesting that the I.Q. tests were not indicative of plaintiff's actual ability, it was reasonable for the administrative law judge to find the I.Q. tests unreliable.

The finding of unreliability as to the I.Q. tests renders plaintiff's other objection to the M&R moot. Plaintiff objects to the M&R on grounds that he satisfied the criteria of Listing 12.05 solely in virtue of his I.Q. tests. Listing 12.05 provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> Or
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> Or
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> Or
> D. A valid verbal, performance, or full scale IQ of 60 through 70,

6

> resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

Given the invalidity of the I.Q. tests, as found above, plaintiff cannot rely on requirements B, C, or D of the Listing. Even if plaintiff did satisfy one of the four requirements, plaintiff would still need to satisfy the "diagnostic description for mental retardation" contained in the introductory paragraph. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A. "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria," the impairment meets the listing. Id. Plaintiff's second objection, then, fails.

## CONCLUSION

For the reasons stated above, plaintiff's objections to the M&R are found lacking in merit and the recommendations of the magistrate judge are accepted. Plaintiff's motion for judgment on the pleadings is DENIED. (DE # 16). For the same reasons, defendant's motion for judgment on the pleadings is GRANTED. (DE # 20). The Clerk of Court is ORDERED to close the case.

SO ORDERED, this the 11th day of June, 2008.

                                                    /s/ Louise W. Flanagan
                                               LOUISE W. FLANAGAN
                                               Chief United States District Judge